IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 19-cr-00351-2 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| ANTONIO CARRAZCO-MARTINEZ, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Defendant Antonio Carrazco-Martinez ("Carrazco-Martinez") was charged with two counts of possession with intent to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1) (Counts I and IV) in a July 2019 indictment. Before the Court are defendant's motion to suppress Closed Circuit Television ("CCTV") and pole camera evidence [339] and his motion to suppress digital analyzer evidence [341]. For the following reasons, the Court denies both motions.

**Background**

In May 2016, federal agents initiated an investigation into Pablo Vasquez-Duarte ("Vasquez-Duarte") and his alleged drug trafficking organization ("DTO"). On October 4, 2016, in the course of the investigation, agents seized approximately 15 kilograms of cocaine and $468,000 from a vehicle driven by Ignacio Cordova ("Cordova"). Thereafter, agents learned from a confidential source ("CS-1") that Carrazco-Martinez had arrived in Chicago to manage activity relating to the DTO and began communicating with CS-1 via a mobile device ("Target Device 1"). On November 21, 2016, agents seized another vehicle linked to the DTO, this time containing 14 kilograms of cocaine. After the seizure, CS-1 did not receive messages or calls from the number associated with Target Device 1.

To identify whether a new phone had taken the place of Target Device 1, the government applied for and received a warrant to use "a pen register, in the form of electronic investigative techniques that capture and analyze signals emitted by cellular telephones to communicate with cellular infrastructure… to determine the electronic identifying number of any cellular telephone being used by [Carrazco-Martinez]." (Dkt. 363-1 at 2). In a footnote, the government clarified that it intended to use a cell-site simulator, which it contended constitutes a pen register device under 18 U.S.C. § 3127(3). While a pen register captures phone numbers dialed on outgoing telephone calls, a cell-site simulator (also called a "Stingray") mimics a cellular tower and causes all mobile phones in its vicinity to transmit signaling information, including location and identifying information, to the device. Chief Judge Castillo issued the Warrant and Order ("Stingray Warrant"), which specifically authorized "use of a cell-site simulator for purposes of identifying the telephones used by [Carrazco-Martinez] …" (Dkt. 361-1 at 35–36).

Over the course of the next two days, agents activated the cell-site simulator near Carrazco-Martinez approximately six times and concluded that he was using a new phone ("Subject Phone 6"). On November 29, 2016, the Court authorized agents to track Subject Phone 6's location, which led agents to a house used by Carrazco-Martinez and an attached garage (the "Target Location"). On December 13, 2016, agents installed one pole camera across the street from the Target Location in a public place, which surveilled the Target Location for approximately three months. Investigators also operated pole cameras outside four other locations relevant to the investigation. On December 14, 2016, the government obtained authorization (the "CCTV Warrant") to install and monitor CCTV within the Target Location. The Court subsequently extended the CCTV order on January 13, 2017 and February 24, 2017.

**Discussion**

    I.    *Motion to Suppress Pole Camera Evidence*

Carrazco-Martinez moves to suppress all evidence obtained from all five pole cameras. Under *United States v. Tuggle*, 4 F.4th 505 (7th Cir. 2021), he argues that the government's actions constitute a Fourth Amendment search because it used a "network of pole cameras," invading his reasonable expectation of privacy. The Court rejects this argument. In *Tuggle*, the government surveilled the defendant using three pole cameras directed at and near the defendant's residence for 18 months. *Id.* at 525. The Seventh Circuit held that the surveillance did not constitute a search because it did not expose the intimate details of the defendant's life, nor did it capture the whole of his physical movements. *Id.* at 524. The outcome is the same here, where the pole camera monitored Carrazco-Martinez's residence for only three months. Likewise, the use of four additional cameras did not invade his reasonable expectation of privacy. *Tuggle*, 4 F.4th at 524.

II.     *Motion to Suppress CCTV and Stingray Evidence*

The Court need not address the parties' arguments as to the constitutionality of the CCTV Warrant and the Stingray Warrant because suppression of evidence is not warranted under the good faith exception. *See United States v. Leon*, 468 U.S. 897, 923, 104 S. Ct. 3405, 3421 (1984). The good faith exception provides that "the fruits of a search based on an invalid warrant may be admitted if the officers who executed the search relied upon the warrant in good faith." *United States v. Yarber*, 915 F.3d 1103, 1106 (7th Cir. 2019). However, suppression "remains an appropriate remedy if the officer misled the issuing judge with knowingly false information or reckless disregard for the truth." *United States v. Grisanti*, 943 F.3d 1044, 1049 (7th Cir. 2019). The defendant may rebut the presumption of good faith by showing that: "(1) the judge issuing the warrant abandoned his detached and neutral role; (2) the officer was dishonest or reckless in preparing the affidavit; or (3) the warrant was so lacking in probable cause that the officer's belief in its existence was entirely unreasonable." *United States v. Woodfork*, 999 F.3d 511, 519 (7th Cir. 2021) (internal citations omitted).

3

Carrazco-Martinez fails to provide evidence to rebut the presumption of good faith. In his reply brief, he argues that "this Court should see through the government's argument that its good faith precludes the Court from applying the exclusionary rule." Yet, he cites to no authority in support of this proposition, nor does he expound upon the assertion any further. In addition, while the government correctly noted that the Seventh Circuit has not decided whether the good faith exception applies to Title III's suppression provision, Carrazco-Martinez took no stance on the issue. *See United States v. Patrick*, 842 F.3d 540, 552 (7th Cir. 2016) (Wood, J. dissenting) (noting that the Seventh Circuit has not decided whether the good faith exception applies to Title III); *see also United States v. Spann*, 409 F. Supp. 3d 619, 625 (N.D. Ill. 2019) (Durkin, J.) (holding that it does). These arguments are waived. *See M.G. Skinner & Assocs. Ins. Agency v. Norman-Spencer Agency*, 845 F.3d 313, 321 (7th Cir. 2017) ("Perfunctory and undeveloped arguments are waived, as are arguments unsupported by legal authority.").

In any event, the record supports application of the good faith exception. First, as to the CCTV warrant application, Carrazco-Martinez does not maintain that the application lacked probable cause. Rather, he asserts that the applications were facially insufficient. Carrazco-Martinez makes no argument that the officers were dishonest or reckless in their preparation of the affidavit. *See Leon*, 468 U.S. at 923. Nor does the evidence suggest that Chief Judge Castillo abandoned his detached and neutral role in issuing the warrant, particularly given the deference the Court must afford the issuing judge. *United States v. McLee*, 436 F.3d 751, 763 (7th Cir. 2006).

With regard to the Stingray Warrant, the defendant likewise did not sufficiently plead an intent to mislead the issuing judge. Carrazco-Martinez argues that the application lacked specificity about the Stingray devices' capabilities, which misled Chief Judge Castillo in his decision to authorize the warrant. However, the government disclosed its intent to use a cell-site simulator and the warrant specifically approved its use. The government need not do more, especially as the

Seventh Circuit has held that the government need not specify the precise manner it intends to use to execute the warrant. *See United States v. Patrick*, 842 F.3d 540, 545 (7th Cir. 2016). The defense did not provide evidence to rebut the presumption of good faith. Despite the concerns raised about the use of Stingray devices and the thorny Fourth Amendment issues they implicate, here, suppression of evidence is not warranted. *See Patrick* 842 F.3d at 545 (Wood, J. Dissenting).

**Conclusion**

For the reasons stated above, defendant's motion to suppress CCTV and pole camera evidence [339] and his motion to suppress digital analyzer evidence [341] are denied.

**IT IS SO ORDERED.**

Date: 2/11/2022               Entered: _____
                                       SHARON JOHNSON COLEMAN
                                       United States District Judge